# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE/WAIVER

### *Kozlov, et al. v. Brown University*
### *U.S.D.C. for the District of Rhode Island, C.A. No. 1:19-cv-00028*

This Settlement Agreement and Release/Waiver (the "Agreement") is entered into by and between named plaintiffs **Maxwell Kozlov and Benjamin Bosis** ("Plaintiffs") and defendant **Brown University** ("Defendant") (referred to herein individually as "Party" and collectively as "Parties"), subject to the approval of the U.S. District Court for the District of Rhode Island, and subject to the additional contingencies set forth herein.

### RECITALS

**WHEREAS**, on or about January 24, 2019, Plaintiffs commenced an action by filing a Complaint in the U.S. District Court for the District of Rhode Island (the "Court"), captioned *Maxwell Kozlov & Benjamin Bosis v. Brown University, C.A. No. 1:19-cv-00028* (the "Action"), in which they alleged that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and Rhode Island law, by failing to pay overtime for hours worked in excess of 40 hours per workweek, failed to pay for all hours worked, failed to pay for allegedly compensable on-call time, and failed to pay a minimum of three hours for shifts that were shorter than three hours in length in violation of Rhode Island law;

**WHEREAS,** Plaintiffs purport to assert their claims in the Action on behalf of a group of allegedly "similarly situated" employees as a putative collective action under the FLSA;

**WHEREAS**, on January 28, 2019, Plaintiffs filed a Motion for Conditional Collective Action Certification (docket entry 6 in the Action), seeking leave of Court to send notice to potential opt-in participants in Plaintiffs' putative collective action FLSA claim, along with related requests pertaining to such conditional certification (the "Certification Motion"), including the tolling of the statute of limitations under the FLSA on any claims that may be asserted on behalf of opt-in participants in the Action;

**WHEREAS**, the Defendant has opposed the Certification Motion;

**WHEREAS**, when the Parties represented to the Court that they anticipated filing this Settlement Agreement and Release/Waiver and requesting Preliminary Approval as discussed in more detail in Section 6 below, the Court denied without prejudice the pending motion in anticipation of the Parties filing appropriate pleadings seeking approval of the settlement and conditional certification;

**WHEREAS**, as a result of information provided by **Maxwell Kozlov**, the Rhode Island Department of Labor and Training ("DLT") commenced proceedings pertaining to the Defendant's compliance with certain Rhode Island laws pertaining to payment of wages and hours of work, bearing docket number **LS# 2018-359** (the "DLT Matter");

**WHEREAS**, on **April 25, 2019**, the Parties conducted a full-day, in-person mediation session with mediator D. Charles Stohler, Esq. (the "Mediation"), and engaged in lengthy negotiations after the mediation, both directly and through the mediator;

**WHEREAS**, as a result of such mediation and good faith, arms-length negotiations, the Parties ultimately reached an agreement to resolve all disputes between them on the terms and conditions set forth herein (the "Settlement");

**WHEREAS,** Plaintiffs, through their counsel, made a thorough and independent investigation of the facts and law relating to the controversies between the Parties;

**WHEREAS**, in agreeing to the Settlement embodied in this Agreement, Plaintiffs considered: (i) the facts developed during their investigation and the law applicable thereto; (ii) the attendant risks of continued litigation and the uncertainty of the outcome of their claims; (iii) the desirability of permitting the Settlement to be consummated according to the terms of this Settlement; and (iv) the conclusion of Plaintiffs that the terms and conditions of this Settlement are fair, reasonable, adequate, and that it is in the best interests of Plaintiffs and the Potential Collective Action Plaintiffs (as defined below) to settle their claims against Defendant as set forth herein; and,

**WHEREAS**, Defendant denies the material allegations of Plaintiffs' Complaint, including all allegations of wrongdoing, fault, liability, or damage to Plaintiffs and the Potential Collective Action Plaintiffs; denies that it engaged in any wrongdoing; denies that it committed any violation of law; denies that it acted improperly in any way; maintains that it acted reasonably and in good faith at all times; and believes the Action has no merit, but is entering into this Settlement solely because the proposed Settlement would eliminate the burden, risk, and expense of further litigation.

**NOW THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, **IT IS HEREBY STIPULATED AND AGREED,** by and between Plaintiffs, Settlement Plaintiffs (as defined below), and Defendant, subject to the final approval by the Court and the other conditions set forth herein, Plaintiffs' and the Settlement Plaintiffs' claims against Defendant shall be settled, compromised, and dismissed, on the merits and with prejudice, and that the Released Claims (as defined below) shall be finally and fully compromised, settled and dismissed as to the Releasees (as defined below), in the manner and upon the terms and conditions hereafter set forth.

## TERMS AND CONDITIONS

### DEFINITIONS

1.     Capitalized terms used in this Agreement shall have the meanings ascribed to them herein.  In addition, the following capitalized terms shall have the meanings specified below:

(a)    "Administrative Costs" means the amount to be paid to the Administrator for all costs in connection with consummating the terms of this Agreement.

(b)    "Administrator" will be a third-party administrator chosen by mutual agreement by the Parties that will be charged with administering this Agreement, in concert with the Parties' counsel.  The Administrator shall act as the agent for the Parties for all the purposes set for in Section 8 below, including, in particular, providing notice to Potential Collective Action Plaintiffs, holding and disbursing funds from the Settlement Account, and providing information and updates to the Parties relative thereto.

(c)    "Effective Date" means the first business day following the date that the Court's final approval of the Settlement is finally affirmed on appeal and/or is no longer subject to appeal or certiorari, and the time for any petition for re-argument, appeal, or review, by certiorari or otherwise, has expired (*i.e.,* thirty-one days from final approval).  The Parties agree to waive all rights to appeal upon entry of a Final Approval Order and dismissal of the case with prejudice on the terms set forth herein.

(d)    "Final Approval Order" means the Order issued by the Court, that the Parties agree to eventually seek, following the execution of this Agreement and implementation of the terms thereof, resulting in the dismissal with prejudice of all claims alleged against Defendant and the other Releasees in the Action.

(e)    "Gross Settlement Amount" means the amount of no more than Six Hundred and Twenty-Thousand Dollars and No Cents ($620,000.00) to be paid by Defendant in connection with the Settlement, and which shall include, without limitation, attorneys' fees (subject to approval by the Court); compensation of the Plaintiffs and the Settlement Plaintiffs, all interest, liquidated and/or multiple damages; incentive payments to the Plaintiffs; and all distributions to the Settlement Plaintiffs subject to approval by the Court.  This amount shall not include the Administrative Costs or any administrative fee or penalty or other payments assessed or imposed by the DLT or the employer payroll and/or other related taxes associated with the payment of a portion of the settlement amount as W-2 income as provided herein, for which Defendant shall also be responsible.

(f)    "Plaintiffs' Counsel" means Richard A. Sinapi and Sinapi Law Associates, Ltd.

(g)    "Potential Collective Action Plaintiffs" means current and former student-employees of Brown who worked at any time between **January 24, 2016 and October 18, 2018** as a Student Unit Manager, Student Assistant Unit Manager, and/or Student Unit Supervisor in the Cashiers, Carts or Blue Room Units of Brown University Dining Services ("BuDS").

(h)    "Prohibited Action" means any action or proceeding (regardless of jurisdiction or venue) seeking any form of relief, recovery, or remedy, whether legal, equitable, or otherwise, brought on an individual basis, a group or collective basis, or on a class-wide basis or on any other putative or purported "representative" basis (including, but not limited to, any

claims brought on a "representative," "derivative" and/or "private attorney general" basis), against any of the Releasees based upon or arising out of the Released Claims.

(i)     "Released Claims" means all actions, claims, demands or causes of action, whether known or unknown, contingent or absolute, arising in whole or in part out of hours worked for BuDS, that have been or could have been raised on behalf of Settlement Plaintiffs in the Action based on the factual allegations asserted in the Action or relating to hours of work or the payment of any form of wages of any kind, including without limitation minimum shift pay, minimum wage, overtime, or entitlement to benefits of any kind, whether pursuant to statute, regulation, common law or otherwise, including without limitation any claims pursuant to the FLSA, and Rhode Island or other state, federal, or local law, arising at any time from the beginning of time through **October 18, 2018**.

(j)     "Releasees" and "Released Parties" means Defendant Brown University, including the Corporation, its Trustees, Fellows, officers, employees, representatives, and agents.

(k)     The "Settlement Account" means the qualified settlement account controlled by the Administrator at a federally insured bank, mutually acceptable to the Parties and to the Administrator, into which the Gross Settlement Amount is or will be deposited.  No other funds shall be commingled within the Settlement Account.

(l)     "Settlement Plaintiffs" means the Plaintiffs and those Potential Collective Action Plaintiffs who elect to participate in the settlement.

(m)     "Settlement Period" means the period from **January 24, 2016 through October 18, 2018**.

### NO ADMISSION OF LIABILITY

2.     Defendant expressly denies any wrongdoing or any violation of federal or state law as alleged in the Action and maintains that at all times it acted reasonably and in good faith.  Nothing contained in this Agreement shall be construed as an admission of any liability by any Party, and all Parties agree not to offer this Agreement as evidence or otherwise use it in any judicial or administrative proceeding, except that this Agreement may be introduced in any proceeding for the sole purpose of enforcing its terms or by Defendant in a proceeding seeking indemnity or contribution in connection with the Action and Settlement, or by Defendant in seeking to have the DLT Matter resolved.

### SETTLEMENT AMOUNT

3.     **Settlement Amount**.   The Gross Settlement Amount of no more than Six Hundred and Twenty-Thousand Dollars and No Cents ($620,000.00) is the total of the sums of Four Hundred Fifty Thousand Dollars and No Cents ($450,000.00) to be paid to Potential Collective Action Plaintiffs, Five Thousand Dollars and No Cents ($5,000.00) to be paid to Named Plaintiffs as incentive payments, and One Hundred Sixty-Five Thousand Dollars and No Cents ($165,000.00) to be paid to Plaintiffs' Counsel for counsel fees and costs.  Defendant will pay the Gross Settlement Amount as consideration for the dismissal of the Action with

prejudice and release of the Released Claims.   The Gross Settlement Amount shall be Defendant's total obligation to Plaintiffs, Settlement Plaintiffs, and Plaintiffs' Counsel arising out of the Action; provided, nevertheless, it is expressly agreed and understood that Defendant shall also be responsible for the additional cost of the employer payroll and/or other related taxes associated with the payment of a portion of the settlement amount as W-2 income as provided herein, which shall not be deducted or paid out of the Gross Settlement Amount. Defendant shall also pay the costs incurred by the Parties' for the Mediation.   Plaintiffs affirm that the Gross Settlement Amount and the other consideration provided by this Agreement compensates them and the Settlement Plaintiffs fully on a compromise basis for all wages and other monies, including interest, to which they may be entitled, and that they are entitled to no additional monies from Releasees based on the factual allegations asserted in the Action or the payment of any form of wages of any kind, including without limitation minimum shift pay, minimum wage, overtime, and entitlement to benefits of any kind, arising in whole or in part out of hours worked for BuDS from the beginning of time through **October 18, 2018.**

4.      **Distribution of Gross Settlement Amount**.   The Gross Settlement Amount will be distributed in the following manner.

(a)      Contingent on receipt by the Administrator of a completed, current IRS Form W-9 from Plaintiffs' Counsel, the agreed upon attorneys' fees and litigation costs will be paid to Plaintiffs' Counsel.   Consistent with the requirements of applicable law, Defendant will pay Plaintiffs' Counsel One Hundred Sixty-Five Thousand Dollars and No Cents ($165,000.00) in counsel fees and costs.   Any attorneys' fees and litigation costs shall be paid from the Gross Settlement Amount and shall not increase the total amount paid by Defendant in connection with the Settlement above the Gross Settlement Amount.

(b)      Any Court-approved incentive payments will be paid to Plaintiffs as approved and/or directed by the Court.   Upon approval of the Settlement, Defendant will pay Plaintiffs an incentive payment of Five Thousand Dollars and No Cents ($5,000.00) in total, divided equally between the two named Plaintiffs.   These incentive payments, if approved by the Court, shall be paid from the Gross Settlement Amount and shall not increase the total amount paid by Defendant in connection with the Settlement above the Gross Settlement Amount.

(c)      Distribution of individual awards to Plaintiffs and to Settlement Plaintiffs shall be made in accordance with the terms of Section 13, below.

## SETTLEMENT APPROVAL PROCEDURES

5.      **Contingency of Agreement**.   This Agreement will become final and effective only upon the occurrence of all of the following events: (a) this Agreement is executed by Plaintiffs and Defendant; (b) the Court approves the material terms of the Settlement as set forth in this Agreement and enters, without material change, the Preliminary Approval Order attached to the Motion for Preliminary Approval (as described below); (c) the Notice (as defined below) is sent to the Potential Collective Action Plaintiffs by the Administrator; (d) Potential Collective Action Plaintiffs are afforded the opportunity to consent to the settlement; (e) the Court enters, without material change, the Final Approval Order attached hereto as

**Exhibit A**; and (f) the time period for any appeal or other challenge to the Final Approval Order expires.

6.      **Settlement Approval Procedures.**   This Settlement requires approval by the Court in the Action.  The Parties agree to the following steps in the sequence set forth below to effectuate the Settlement and to obtain Court approval.  The Parties and their attorneys agree to cooperate fully and to use all reasonable efforts and due diligence to effectuate the terms and conditions of this Agreement, including the execution of all necessary documents, in order to obtain approval of the Settlement.

(a)      **Preliminary Approval**.   Simultaneously with the Parties' review and execution of this Agreement, the Parties have prepared a Joint Motion for Preliminary Approval of the Settlement (the "Preliminary Approval Motion").  The Preliminary Approval Motion seeks approval of the terms of this Agreement, including the attorneys' fees to Plaintiffs' Counsel and the incentive payments to Plaintiffs set forth in Section 4, above.  The Preliminary Approval Motion also seeks conditional certification of the class and approval of a Notice of Lawsuit and Proposed Collective Action Settlement ("Notice") and Consent to Join and Release Form ("Consent Form") in a form approved by Plaintiffs' Counsel and Defendant.  The Notice informs Potential Collective Action Members of the Settlement, describes the scope of the Released Claims and describes the process for participating in the Settlement.  The form, content, timing, and all other aspects of the Notice and Consent Form (as described below) have been negotiated and agreed upon by the Parties, as appended to the Preliminary Approval Motion.  Either Party may seek a determination by the Court regarding any potential follow-up notice required in the event that the rate of participation by Settlement Plaintiffs is unexpectedly low.

(1)      Counsel for the Parties will communicate with the clerk of the Court and make any further filings necessary to secure the approval of their request, including a request for a hearing, if it appears to counsel for either party that such a hearing is necessary to obtain prompt approval.

(2)      This Agreement shall become null and void in the event that the Court fails to enter the  Preliminary Approval Order in substantially the same form agreed to by the Parties.  However, the Parties agree to work cooperatively to address any concerns raised by the Court, provided that they do not change the material terms of the Parties' Agreement.  If preliminary approval is not granted, this Agreement shall not be deemed to prejudice in any way any of the Parties' rights, and the Parties shall be restored to their respective positions in the Action, as they existed immediately prior to the Parties' agreement-in-principle of May 28, 2019, on which this Agreement is based, as well as and including continuation of the tolling period through the date of the Court's subsequent determination of the Plaintiffs' renewed Motion for Conditional Collective Action Certification, for an Expedited Hearing on the same, and for Expedited Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(B).  Further, in the event that the Court fails or declines to approve the Parties' Settlement, the Parties agree that neither this Agreement, nor the terms contained herein may be used for any purpose whatsoever in the Action or any other legal proceeding.

(b)      **Final Approval**.   The Parties shall jointly prepare and, upon the expiration of the Opt-In Period (as defined below), the Parties shall file a Motion for Final

Approval of the Settlement, which will be consistent with the terms of this Agreement and the Court's Preliminary Approval and shall seek entry of a Final Approval Order.

### DISMISSAL OF DEPARTMENT OF LABOR AND TRAINING COMPLAINT

7.     Upon entry of the Preliminary Approval Order, Kozlov agrees immediately and formally to withdraw his complaint at the DLT and state his intention not to participate in any further proceedings pertaining to the DLT Matter except to the extent compelled by subpoena or other lawful order or process.  Defendant shall be solely responsible for payment of any fees, penalties, assessments, or other sums imposed or assessed by the DLT arising out of the DLT Matter and/or any legal proceedings relative to the resolution of the DLT Matter.  Under no circumstances will the Gross Settlement Amount be reduced on account of any payment obligations imposed on the Defendant on account of the DLT Matter or otherwise.  As part of the consideration underlying this Agreement, Kozlov agrees that he and his counsel shall reasonably cooperate with Defendant in seeking the DLT's approval of an agreed statement of facts discussed by the Parties and the DLT during the June 10, 2019 telephonic settlement conference in the DLT Matter.  Kozlov agrees that he and his counsel will take no steps to interfere with Defendant's efforts to secure dismissal of the DLT proceeding or with Defendant's efforts to avoid the imposition of fees, penalties, or assessments in conjunction with such dismissal, including making no objection to any agreed statement of facts entered into by Defendant and DLT, provided that Kozlov has been dismissed from the DLT proceeding, otherwise Kozlov may refuse to assent to any factual matters stated therein that are false, misleading, or untrue or the application of which may estop or potentially estop or otherwise prevent or impede or potentially prevent or impede Plaintiffs from fully prosecuting and obtaining full relief in the Action should the Parties' Settlement not be approved by the Court or from receiving the full benefit of the Parties' Settlement if approved by the Court.

### SETTLEMENT ADMINISTRATION PROCEDURES

8.     **Retention of Administrator.**  Defendant shall retain the Administrator as soon as practicable, upon agreement by the Parties, for purposes of providing notice to Potential Collective Action Plaintiffs, assisting Plaintiffs in calculating the payments owed to each Settlement Plaintiff, distributing payments to Plaintiffs, Plaintiffs' Counsel, and Settlement Plaintiffs, and undertaking required tax reporting on all such payments.  All Administrative Costs of the Administrator shall be paid by Defendant.  The Administrator shall promptly respond to reasonable requests and/or inquiries made by the Parties and shall provide periodic reports that, among other things, identify all the Settlement Plaintiffs, identify the Settlement Plaintiffs to whom payments have been made or payments are owed, identify all Potential Collective Action Plaintiffs, in particular those who have not yet opted in, and itemize the funds distributed and remaining within its possession.

9.     **Provision of Data to Administrator**.  Within fourteen (14) days of receiving an Order of Preliminary Approval of the Settlement from the Court, Defendant, to the extent it can reasonably locate such information in its business records, will provide to the Administrator and Plaintiffs' Counsel a spreadsheet that contains the names and employee identification numbers of the Potential Collective Action Plaintiffs and their last known mailing address, email address, and any other electronic or other address or means/manner of

customary communication of which Defendant is aware (the "Settlement Class List").   The Administrator and Plaintiffs' Counsel shall be instructed to keep this data confidential and use it only for purposes of ensuring the provision of proper notice and dissemination of payments to Potential Collective Action Plaintiffs.

10.   **Mailing of Notice**.   The Administrator will effectuate mailing and electronic delivery of the Notice and Consent Form, as agreed to by the Parties and/or approved by the Court.   At a minimum, the Administrator will be instructed to send the Court-approved Notice and Consent Form by first class mail and email (collectively "mailing" or "mail") to Potential Collective Action Plaintiffs within five (5) days of receiving the Settlement Class List.   Before mailing the Notice and Consent Form, the Administrator will be instructed to perform a physical and electronic address (collectively "address") update of the Settlement Class List through recognized address update databases.   With regard to any Notices and Consent Forms that are returned to the Administrator as undeliverable, the Administrator will promptly notify both Parties of such returns and perform a customary database search or skip trace to locate a current mailing and/or email address as the case may be and, if a current address is located, shall promptly re-mail and/or email the settlement documents and notify the Parties of the new address or addresses.   Defendant agrees to provide promptly all information within its possession and requested by the Administrator to research a correct address.

11.   **Consent to Join**.   The Notice shall be accompanied by a form to be completed by Potential Collective Action Plaintiffs seeking to participate in the Settlement (the "Consent Form").   Potential Collective Action Plaintiffs shall have a period of one hundred eighty (180) days from the Administrator's mailing of the Notice to return the Consent Form to the Administrator and thereby become Settlement Plaintiffs.   Any Potential Collective Action Plaintiffs who do not return a Consent Form within the Opt-In Period ("Non-Participants") shall receive no funds in connection with the Settlement from the Administrator and shall not be bound by this Agreement in any respect.

### SETTLEMENT FUNDING AND DISTRIBUTION OF PAYMENTS

12.   **Funding of Settlement.**

(a)   **Funding Date**.   Within fifteen (15) business days of the Effective Date, (the "Funding Date"), Defendant shall deposit the Gross Settlement Amount into the Settlement Account established by the Administrator pursuant to Section 12(b), below.   The funds in the Settlement Account shall remain the property of Defendant unless and until distributed in the manner provided in the Final Approval Order.   Defendant shall not be required to deposit into the Settlement Account more than the Gross Settlement Amount.

(b)   **Settlement Account**.   With respect to the Settlement Account, the Administrator shall: (1) open and administer the Settlement Account in such a manner as to qualify and maintain the qualification of the Settlement Account as a "Qualified Settlement Fund" under Section 468B of the Code and Treas. Reg. § 1.468B-1; (2) calculate, withhold, remit, and report each Settlement Plaintiff's share of applicable payroll taxes in connection with the Settlement Payment; (3) satisfy all tax reporting, return, and filing requirements with respect to the Settlement Account and any interest or other income earned by the Settlement Account; and (4)

satisfy out of the Settlement Account all taxes (including any estimated taxes, interest, or penalties) with respect to the interest or other income earned by the Settlement Account. Fees, expenses, and costs incurred in connection with the opening and administration of the Settlement Account shall be treated as, and included in, the costs of administering the Settlement Account and as Administrative Costs. The Parties and the Administrator shall elect to treat the Settlement Account as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 CFR § 1.468B-1(j)(2)(i), and such election statement shall be attached to the appropriate returns as required by 26 C.F.R. § 1.468B-1(j)(2)(ii). The Parties agree to cooperate with the Administrator and one another as necessary to effectuate the terms of this Settlement Agreement. In no event shall the Administrator withdraw, transfer, pledge, impair, or otherwise make use of the funds in the Settlement Account except as expressly provided in this Agreement. In particular, no part of the Gross Settlement Amount shall be allocated to pay Administrative Costs. Finally, notwithstanding anything herein, it is expressly agreed and understood that Defendant shall be responsible for paying the employer payroll and/or other related taxes associated with the payment of a portion of the settlement amount as W-2 income as provided herein, which shall not be deducted or paid out of the Gross Settlement Amount.

13. **Distributions to Plaintiffs and Settlement Plaintiffs.**

(a) **Calculation of Distributions**. Individual awards to Plaintiffs and Settlement Plaintiffs will be calculated based on a formula, which shall take into account for each Settlement Plaintiff: (i) the length of time the worker was employed during the Settlement Period and (ii) their scheduled on call hours within the Settlement Period. The settlement amount will be apportioned in separate lump sums in the amount of $300,000 to the Supervisors and $150,000 to the Managers. For Managers and Assistant Managers, those amounts will then be fairly apportioned to each unit per semester during the relevant period (**between January 24, 2016 and October 18, 2018**) based on the scheduled hours of operation of each unit. Each Manager (or Assistant Manager) will be compensated based on the number of semesters, or portion thereof, he or she was employed and the scheduled hours of operation of his or her unit, except that Managers and Assistant Managers in the Blue Room Unit are compensated for half of the Unit's scheduled hours of operation. After determining the on-call hours scheduled for each Supervisor, the total allocation of $300,000 will be divided by the total number of on-call supervisor hours in all three (3) units, resulting in an amount to be allocated per hour. Each Supervisor will then be compensated based on their total number of scheduled on-call hours each semester during the relevant period multiplied by the amount to be allocated per hour; however, all Managers and Supervisors shall receive not less than a minimum amount of $200.00. The Parties will cooperate to resolve any disputes relative to the allocation of the Gross Settlement Amount and will bring them to the Court's attention for resolution only if they cannot be resolved amicably. A spreadsheet containing the proposed distribution to each Potential Collective Action Plaintiff is attached hereto as **Exhibit B**.

(b) **Payments to Settlement Plaintiffs.** The Administrator will withhold from payments to Plaintiffs and Settlement Plaintiffs taxes and other sums payable by employees as required by state or federal law. The Parties agree that one half (1/2) of the award paid shall be treated as W-2 wages, and the remaining one-half (1/2) shall be treated as interest and/or liquidated damages for tax purposes reported to state and federal taxing authorities as non-wage income on IRS Form 1099 Misc (Box 3—Other income). Payments to Settlement Plaintiffs shall

be made by the Administrator within seven (7) days of the Funding Date. The Administrator shall be instructed to take reasonable steps to ensure that all Settlement Plaintiffs who do not cash their checks will not have payments pursuant to this Settlement Agreement reported to the IRS. The Administrator shall also provide tax reporting of attorneys' fees payable in conjunction with the Settlement.

   (c) **Incentive Payment to Plaintiffs**. Any incentive payments awarded to Plaintiffs by the Court shall be distributed by the Administrator in separate checks mailed contemporaneously with the mailing of Settlement Payments and shall be allocated equally between W-2 wages and liquidated damages reported to state and federal taxing authorities as non-wage income on IRS Form 1099 Misc (Box 3—Other income).

   (d) **Expiration of Settlement Checks**. Each check issued by the Administrator shall expire ninety (90) days after it is issued. At the close of the 90-day period, the Administrator will issue a stop payment order on all uncashed or returned checks. In the event a Settlement Plaintiff reports a lost or destroyed check within the 90-day period, the Administrator shall issue a stop order on the original check and issue a new check. The Administrator will make reasonable efforts to determine why the checks were uncashed or returned and reissue the checks accordingly. In any event, the Administrator shall reissue a check upon request. A failure by a Settlement Plaintiff to deposit or cash a signed check within the time period allotted shall have no effect on that individual's release of claims pursuant to Section 14 or 15, provided that the Administrator shall have made reasonable efforts to determine why the checks were uncashed or returned and reissued the checks accordingly for the agreed upon consideration.

   (e) **Distribution of Remaining Settlement Funds**. Forty-five (45) days after the settlement checks expire pursuant to Section 13(d) above, any funds remaining in the Settlement Account shall be tendered to the DLT in the form of checks made payable jointly to each Settlement Plaintiff who failed to deposit or cash a signed check or Non-Participant and the DLT.

**RELEASE AND WAIVER**

   14. **General Release By Plaintiffs**. Plaintiffs, by signing this Agreement and effective upon this Agreement's Effective Date, hereby fully, forever, irrevocably and unconditionally release, discharge, and agree and covenant not to sue or bring any complaints, charges or claims against the Released Parties with respect to, any and all claims, charges, complaints, demands, actions, causes of action, sums of money, costs, losses, contracts, agreements, damages, obligations, liabilities, and expenses (including attorneys' fees and costs), of every kind and nature whatsoever, whether known or unknown, either at law, in equity, or mixed, accruing from the beginning of time until the Plaintiff signs this Agreement, arising out of any matter or thing that has happened, developed, or occurred with respect to their employment with any Released Party, including, but not in limitation of the foregoing general terms, any claims, asserted or unasserted, arising from their employment with or separation from Defendant, specifically including any claims they may have under any federal or state, county or local labor, employment or discrimination laws including statutes, public policies, orders or regulations, including but not limited to (all as may have been amended): all

**Page 10 of 14**

claims that were raised or that could have been raised in the Action; claims pursuant to the Fair Labor Standards Act, the federal Worker Adjustment Retraining Notification Act ("WARN Act"), Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Equal Pay Act of 1963, the Occupational Safety and Health Act of 1970, the Rehabilitation Act of 1973, the National Labor Relations Act of 1935, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Employee Retirement Security Act of 1974, all claims pursuant to Rhode Island law, or claims at common law, including but not limited to claims or suits arising prior to the signing of this Agreement relating to breach of an oral or written contract, wrongful discharge, misrepresentation, defamation, interference with prospective economic advantage, interference with contractual relationship, intentional and negligent infliction of emotional distress, negligence, and breach of the covenant of good faith and fair dealing, and loss of consortium by family members. It is expressly agreed and understood that this release is a GENERAL RELEASE. It is further expressly agreed and understood that this release does not release any claims, charges, complaints, demands, actions, causes of action, sums of money, costs, losses, contracts, agreements, damages, obligations, liabilities, and expenses (including attorneys' fees and costs), of every kind and nature whatsoever, whether known or unknown, either at law, in equity, or mixed, accruing subsequent to the date that the Plaintiffs sign this Agreement.

15. **Release Language on Notice**. The Consent Form shall include the release of claims applicable to Settlement Plaintiffs substantially in the form set forth below:

In consideration of the promises made in the Settlement Agreement, each Settlement Plaintiff hereby forever discharges and releases Brown University, including the Corporation, its Trustees, Fellows, officers, employees, representatives, and agents (collectively, the "Released Parties"), from any and all actions, claims, demands or causes of action, whether known or unknown, contingent or absolute, arising in whole or in part out of hours worked for BuDS, that have been or could have been raised on behalf of Settlement Plaintiffs in the Action based on the factual allegations asserted in the Action or relating to hours of work or the payment of any form of wages of any kind, including without limitation minimum shift pay, minimum wage, overtime, or entitlement to benefits of any kind, whether pursuant to statute, regulation, common law or otherwise, including without limitation any claims pursuant to the FLSA, and Rhode Island or other state, federal, or local law, arising at any time from the beginning of time through **October 18, 2018.**

16. **Dismissal of Action.** Upon entry of the Final Approval Order, all claims for relief asserted in the Action will be dismissed with prejudice and on the merits. All such dismissals shall be without costs to any party. Also, as of the entry date of the Final Approval Order, Plaintiffs and the Settlement Plaintiffs shall have, and by operation of the Final Approval Order shall be deemed to have, completely, voluntarily, knowingly, unconditionally and forever, released, acquitted, and discharged the Released Parties from the Released Claims as provided herein and shall be forever barred from commencing, instituting, or prosecuting any Prohibited Action.

## CONFIDENTIALITY/NON-DISCLOSURE

17.    **Joint Statement of the Parties.**  The Parties have jointly prepared a statement regarding the Action and the Settlement, appended hereto as **Exhibit C** (the "Joint Statement").  The Parties may physically or electronically post or distribute the Joint Statement in their discretion.  Plaintiffs shall make no other statements to any person or entity regarding the Action, the Settlement, or the Agreement, other than to refer any such person or entity to the Joint Statement or to state that Plaintiffs' claims against Defendant have been resolved or words to like effect. Should any of the Released Parties make any statement that contradicts, conflicts, or is otherwise incongruous with the content, intent, and/or purpose of the Joint Statement, the Plaintiffs may notify Defendant and request that appropriate remedial action be taken, including issuance of an appropriate corrective public statement.   The foregoing limitation applies only to the two named Plaintiffs and shall expire three (3) years from the date that this Agreement is signed.

## OTHER PROVISIONS

18.    **Governing Law**.   This Agreement and all exhibits hereto and any related settlement document shall be governed and interpreted in accordance with the laws of the State of Rhode Island, without regard to the conflict of law provisions thereof.

19.    **Complete Agreement**.   This Agreement, along with all exhibits hereto or contemplated herein, constitutes the entire agreement and understanding of the Parties and supersedes any prior agreements or understanding between the Parties with respect to the Settlement.   The Settlement is not subject to any term or condition not contained in this Agreement.   There are no collateral or oral agreements between the Parties that are not stated in this Agreement.   In entering into this Agreement, no party is relying on any promise, warranty, inducement, or representation other than those set forth in this Agreement.  All the Exhibits hereto are incorporated in and constitute an integral part of this Agreement.

20.    **Amendments**.  This Agreement may be amended or modified only by a written instrument signed by all Parties hereto.   No party shall have any obligation whatsoever to proceed with the Settlement under any terms other than substantially in the form provided and agreed to in this Agreement.

21.    **Successors and Assigns**.   This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, successors, transferees, and assigns, and upon any corporation or other entity with which any party hereto may merge, consolidate, or reorganize.

22.    **Cooperation in Drafting**.  This Agreement, together with any Exhibits, shall be deemed to have been mutually prepared by the Parties and shall not be construed against any of them by reason of authorship.   The Parties agree that the terms and conditions of this Agreement were negotiated at arms-length and in good faith by the Parties, and reflect a Settlement that was reached voluntarily based upon adequate information, sufficient discovery, and after consultation with experienced legal counsel.

23.     **Non-Waiver**.  The waiver by one Party of any breach of the Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.  If any Party hereto engages in a material breach of the terms hereof, the other Party, provided that it is in substantial compliance with the terms of this Agreement, may seek all remedies available at law and equity.

24.     **Severability**.  If any part of this Agreement is found to be illegal, invalid, inoperative, or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Agreement, which shall be construed, reformed, and enforced to effect the purposes thereof to the fullest extent permitted by law.  If one or more of the provisions contained in the Agreement shall for any reason be held to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable at law, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent under the applicable law.  As noted in Section 5, however, this Agreement will not become final and effective unless the Court approves all of the material terms of the Settlement.

25.     **Knowing and Voluntary Agreement**.  Plaintiffs agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. Plaintiffs further affirm that neither of them has been coerced, threatened, or intimidated into signing this Agreement and that they have been advised by an attorney of their own choosing in conjunction with their decision to enter into the Settlement and sign this Agreement. Plaintiffs' represent that they have conducted a thorough investigation into the facts of the Action and have diligently pursued an investigation of the claims asserted on behalf of Settlement Plaintiffs against Defendant.  Based on their own independent investigation and evaluation, Plaintiffs believe that the settlement is fair, reasonable, and adequate and is in the best interest of the Settlement Plaintiffs, in light of all known facts and circumstances, including the risks of significant delay and defenses asserted by Defendant.

26.     **Warranty of No Other Lawsuits.**  Each Plaintiff represents and warrants that, other than the DLT Matter involving Kozlov, he has not filed any other lawsuit, administrative charge, or other legal action against the Defendant or any of the Released Parties, that remains pending as of the date of execution of this Agreement, and further that if any other lawsuit, administrative charge, or other legal action is in fact pending, he will immediately dismiss any and all such matters without any additional payment.

27.     **Notices.**  Any notices issued pursuant to the terms of this Agreement shall be sent by regular mail or email to the Parties at the addresses of their respective counsel as follows:

| For Plaintiffs, Settlement Plaintiffs and Plaintiffs' Counsel: | For Defendant: |
|---|---|
| Richard Sinapi | Barry Miller |
| Sinapi Law Associates | Seyfarth Shaw LLP |
| 2374 Post Road, Suite 201 | Two Seaport Lane, Suite 300 |
| Warwick, RI 02886 | Boston, MA  02210 |
| Phone: 401-739-9690 | (617) 946-4800 |

ras@sinapilaw.com                    bmiller@seyfarth.com

28.    **Time Periods**.  In the event that any time period described in this Agreement expires on a Saturday, Sunday or legal holiday, such time period shall be extended through the next subsequent business day.

29.    **Authority to Execute**.    Each of the individuals executing this Agreement warrants and represents that he or she has been duly authorized and empowered to (a) execute this Agreement on behalf of such Party and (b) take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

30.    **Execution in Counterparts**.  This Agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement provided that counsel for the Parties shall exchange among themselves original signed counterparts.

IN **WITNESS WHEREOF,** the Parties each voluntarily and without coercion, have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

_____          _____
**Maxwell Kozlov**                              **Benjamin Bosis**

Date: 9/30/19                                   Date: 9/30/19

                                             **Brown University**

                                             _____

                                             Name: Barbara Chernow

                                             Title: EVP Finance and Administration

                                             Date: 9/27/19

# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **MAXWELL D. KOZLOV and BENJAMIN D. BOSIS, individually and on behalf of other similarly situated individuals,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 1:19-cv-00028** |
| **BROWN UNIVERSITY IN PROVIDENCE IN THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS, alias,** | |
| **Defendant.** | |

## FINAL APPROVAL ORDER

This matter came on to be heard on the Motion for Final Certification and Approval of Settlement filed by the Parties, and after consideration thereof, it is hereby,

### ORDERED, ADJUDGED AND DECREED:

1. The Fair Labor Standards Act collective class described in the Joint Memorandum of Law is granted final certification;

2. The proposed Settlement Agreement of the Parties filed with this Court in the within action is granted final approval;

3. This matter is conditionally dismissed with prejudice, no interest, no costs, subject to and conditioned upon the Defendant's full and timely compliance with the provisions of the approved Settlement Agreement, in particular, the distribution of the Gross Settlement Proceeds; and,

4. This Court shall retain jurisdiction over the within action to enforce the Settlement Agreement.

**ENTERED** as an Order of this Court this _____ day of _____, **2019.**

**ENTER:**                                      **PER ORDER:**

_____     _____
**John J. McConnell, J.**

**Page 1 of 2**

Respectfully submitted, this ___ day of **September, 2019.**

| | |
|---|---|
| **PLAINTIFFS MAXWELL KOZLOV, BENJAMIN BOSIS**, et al | **DEFENDANT BROWN UNIVERSITY** |
| By their attorneys, | By its attorneys: |
| */s/ Richard A. Sinapi* | */s/ Michael E. Jusczyk* |
| Richard A. Sinapi (#2977) | Michael E. Jusczyk (Bar #7791) |
| Chloe A. Davis (#9334) | Barry J. Miller (Mass. BBO# 661596), *pro hac vice* |
| 2374 Post Road, Ste. 201 | Hillary Massey (Mass. BBO# 669600), *pro hac vice* |
| Warwick, RI 02886 | SEYFARTH SHAW LLP |
| (401) 739-9690 | Two Seaport Lane, Ste. 300 |
| ras@sinapilaw.com | Boston, MA 02210 |
| cad@sinapilaw.com | (617) 946-4800 |
| | mjusczyk@seyfarth.com |
| | bmiller@seyfarth.com |
| | hmassey@seyfarth.com |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically on

**September __, 2019** through the Court's CM/ECF system, which will send notice of this filing

to all counsel of record.

*s/ Richard A. Sinapi*

# Exhibit B

| Names | Payout Amount - Supervisor | Payout Amount - Manager | Nominal Payment | Source of Nominal Payment | Total On-Call Hours | Total Payout Amount |
|---|---|---|---|---|---|---|
| Abdur-Razzaq, Jahi K | $ 1,803.64 | | | | 248.50 | $ 1,803.64 |
| Acevedo, Desiree J | $ 2,536.70 | | | | 349.50 | $ 2,536.70 |
| Adegbulugbe, Esther I | | $ 9,176.62 | | | 1,755.75 | $ 9,176.62 |
| Ahmed, Ezza | $ 2,072.18 | | | | 285.50 | $ 2,072.18 |
| Alfaro, Kenia | | $ 4,093.74 | | | 1,566.50 | $ 4,093.74 |
| Barland, Mathilde | $ 892.74 | $ 1,766.59 | | | 799.00 | $ 2,659.34 |
| Bazile, Michelle M | $ 4,761.31 | | | | 656.00 | $ 4,761.31 |
| Bennett, Andrea M | $ 10,767.38 | | | | 1,483.50 | $ 10,767.38 |
| Biagas-Hill, Randy | $ 9,662.33 | | | | 1,331.25 | $ 9,662.33 |
| Bosis, Benjamin D | $ 11,415.16 | | | | 1,572.75 | $ 11,415.16 |
| Brea, Taonelly | $ 4,394.77 | | | | 605.50 | $ 4,394.77 |
| Brooks, Keri R | $ 3,590.94 | | | | 494.75 | $ 3,590.94 |
| Brown, Alec D | $ 7,650.03 | | | | 1,054.00 | $ 7,650.03 |
| Brunet, Logan W | $ 1,291.94 | | | | 178.00 | $ 1,291.94 |
| Camacho, Bianca | $ 1,106.86 | | | | 152.50 | $ 1,106.86 |
| Castro Davalos, Gloria B | $ 990.73 | | | | 136.50 | $ 990.73 |
| Champeau, Justin M | $ 1,502.42 | $ 7,376.05 | | | 3,029.50 | $ 8,878.48 |
| Chang, Victor | | $ 4,093.74 | | | 1,566.50 | $ 4,093.74 |
| Cleary, Alison L | $ 3,708.88 | $ 1,766.59 | | | 1,187.00 | $ 5,475.48 |
| Coates, Jonathan M | $ 2,389.73 | | | | 329.25 | $ 2,389.73 |
| Cody, Eleanor A | $ 471.78 | | | | 65.00 | $ 471.78 |
| Contreras Carrera, Martin | $ 1,477.02 | | | | 203.50 | $ 1,477.02 |
| Costa, Mary J | $ 845.57 | | | | 116.50 | $ 845.57 |
| Evans, Kyle | $ 2,903.24 | | | | 400.00 | $ 2,903.24 |
| Farrias, Zachary J | $ 1,633.07 | | | | 225.00 | $ 1,633.07 |
| Farrow, Stacie L | $ 2,239.12 | | | | 308.50 | $ 2,239.12 |
| Ferenzi, Justin M | $ 1,868.96 | | | | 257.50 | $ 1,868.96 |
| Ferguson, Katherine M | $ 5,164.13 | | | | 711.50 | $ 5,164.13 |
| Fleming, Joseph M | $ 7,833.29 | | | | 1,079.25 | $ 7,833.29 |
| Franzen, Tessa | $ 660.49 | $ 16,013.02 | | | 3,154.75 | $ 16,673.51 |
| Gannane, Catherine A | | | $ 200.00 | Manager Pool | 0.00 | $ 200.00 |
| Garcia, Geronimo | $ 555.24 | | | | 76.50 | $ 555.24 |
| Garcia, Giselle C | $ 1,088.71 | | | | 150.00 | $ 1,088.71 |
| Gomes, Savannah L | | $ 7,376.05 | | | 2,822.50 | $ 7,376.05 |
| Graham, Fiona J | $ 1,829.04 | | | | 252.00 | $ 1,829.04 |
| Gunanathan, Geetanjali | $ 1,415.33 | $ 22,014.48 | | | 4,407.00 | $ 23,429.80 |
| Gutierrez Sanabria, Jorge D | | $ 4,234.86 | | | 810.25 | $ 4,234.86 |
| Hardy, Aaron J | $ - | | $ 200.00 | Supervisor Pool | 15.00 | $ 200.00 |
| Hemenway, Molly M | $ 3,835.90 | | | | 528.50 | $ 3,835.90 |
| Hernandez, Neidin A | $ - | | $ 200.00 | Supervisor Pool | 19.75 | $ 200.00 |
| Huddleston, Jarrett E | $ 1,088.71 | | | | 150.00 | $ 1,088.71 |
| Huynh, Jo-Ann | $ 1,912.51 | | | | 263.50 | $ 1,912.51 |
| Ip, Ivan N | $ 849.20 | | | | 117.00 | $ 849.20 |
| Iwasaki, Nola C | $ 1,193.96 | | | | 164.50 | $ 1,193.96 |
| Jain, Tricia | $ 3,224.41 | | | | 444.25 | $ 3,224.41 |
| Jaramillo, Brenda S (Sarai) | | $ 8,090.79 | | | 3,096.00 | $ 8,090.79 |
| Jimenez, Katherine M | $ 5,793.77 | $ 851.94 | | | 961.25 | $ 6,645.71 |
| Kabashi, Fortesa | $ 6,058.69 | | | | 834.75 | $ 6,058.69 |
| Kariuki, Anthony M | $ 3,946.59 | | | | 543.75 | $ 3,946.59 |
| Kim, Casey H | $ 4,721.39 | | | | 650.50 | $ 4,721.39 |
| Kim, Kyunghan | $ - | | $ 200.00 | Supervisor Pool | 8.50 | $ 200.00 |
| Knueppel, Jenna L | $ 1,970.57 | | | | 271.50 | $ 1,970.57 |
| Kobrick, Alisha D | $ 500.81 | | | | 69.00 | $ 500.81 |
| Kocks, Geoffrey D | $ 2,162.91 | | | | 298.00 | $ 2,162.91 |
| Kong, Abby H | | | $ 200.00 | Supervisor Pool | 0.00 | $ 200.00 |
| Koss, Zoe A | $ - | | $ 200.00 | Supervisor Pool | 18.00 | $ 200.00 |
| Kozlov, Maxwell D | $ 4,362.11 | $ 20,149.88 | | | 4,456.25 | $ 24,512.00 |
| Laanstra-Corn, Maaike H | $ 319.36 | | | | 44.00 | $ 319.36 |
| Langlois, Luc M | $ - | | $ 200.00 | Supervisor Pool | 16.00 | $ 200.00 |
| Levy, Devra K | $ 4,409.29 | | | | 607.50 | $ 4,409.29 |

| Name | | Amount 1 | | Amount 2 | | Amount 3 | Pool | Hours | | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Lopez, America | $ | 849.20 | $ | 8,090.79 | | | | 3,213.00 | $ | 8,939.99 |
| Love, Marques M | $ | 2,801.62 | | | | | | 386.00 | $ | 2,801.62 |
| Lozano, Brittany R | $ | 1,005.25 | | | | | | 138.50 | $ | 1,005.25 |
| Martinez, Marisela | $ | 818.35 | | | | | | 112.75 | $ | 818.35 |
| Meeks, Amistad C | $ | - | | | $ | 200.00 | Supervisor Pool | 13.00 | $ | 200.00 |
| Mera Evans, Tyco B | $ | 812.91 | | | | | | 112.00 | $ | 812.91 |
| Newitt, Julia S | $ | 2,935.90 | | | | | | 404.50 | $ | 2,935.90 |
| Nguyen, Christina V | $ | 7,189.14 | | | | | | 990.50 | $ | 7,189.14 |
| Nguyen, Kimberly | $ | 3,120.98 | | | | | | 430.00 | $ | 3,120.98 |
| Nguyen, Qui-Huong T | $ | 1,800.01 | | | | | | 248.00 | $ | 1,800.01 |
| Nguyen, Thang | $ | 1,763.72 | | | | | | 243.00 | $ | 1,763.72 |
| Niesen, Shane H | $ | 627.82 | | | | | | 86.50 | $ | 627.82 |
| Ochoa, Leslie M | $ | 1,001.62 | | | | | | 138.00 | $ | 1,001.62 |
| Ostrowski, Benjamin J | $ | 5,637.72 | | | | | | 776.75 | $ | 5,637.72 |
| Park, Stephanie S | $ | 5,940.75 | | | | | | 818.50 | $ | 5,940.75 |
| Paul, Austin E | $ | 2,750.82 | | | | | | 379.00 | $ | 2,750.82 |
| Perez, Elisabeth E | $ | 8,381.28 | | | | | | 1,154.75 | $ | 8,381.28 |
| Pham, Gia Bao H | $ | 1,262.91 | | | | | | 174.00 | $ | 1,262.91 |
| Portilla, William G | $ | 11,444.19 | | | | | | 1,576.75 | $ | 11,444.19 |
| Portugal, Antonella C | $ | 1,150.41 | | | | | | 158.50 | $ | 1,150.41 |
| Potee, Benjamin G | $ | 8,738.74 | $ | 3,575.00 | | | | 1,888.00 | $ | 12,313.74 |
| Pottinger, Ijahala | $ | 4,750.42 | | | | | | 654.50 | $ | 4,750.42 |
| Pruett-Fiederlein, Elena A | $ | 1,774.60 | | | | | | 244.50 | $ | 1,774.60 |
| Quebedeaux, Kylie R | $ | 1,553.23 | | | | | | 214.00 | $ | 1,553.23 |
| Rafatjoo, Alexander K | | | | | $ | 200.00 | Supervisor Pool | 0.00 | $ | 200.00 |
| Rhodenhiser, Emma Jane J | | | | | $ | 200.00 | Manager Pool | 0.00 | $ | 200.00 |
| Rilatos, Savanna M | $ | 3,649.00 | $ | 3,575.00 | | | | 1,186.75 | $ | 7,224.00 |
| Ruggieri, Amanda L | $ | 1,114.12 | | | | | | 153.50 | $ | 1,114.12 |
| Saidia, Lina | $ | 660.49 | | | | | | 91.00 | $ | 660.49 |
| Sallembien, James H | $ | 4,795.78 | | | | | | 660.75 | $ | 4,795.78 |
| Sanchez, Lorenzo M | $ | 4,895.58 | | | | | | 674.50 | $ | 4,895.58 |
| Satish, Ella J | $ | 1,030.65 | | | | | | 142.00 | $ | 1,030.65 |
| Seeger, Sara J | $ | 4,665.14 | $ | 17,621.51 | | | | 4,014.25 | $ | 22,286.65 |
| Simpson, Hannah K | | | | | $ | 200.00 | Manager Pool | 0.00 | $ | 200.00 |
| Sirimoungkhons, Mallissa B | $ | 9,036.32 | | | | | | 1,245.00 | $ | 9,036.32 |
| Smolcic Larson, Lucas G | $ | 2,993.96 | | | | | | 412.50 | $ | 2,993.96 |
| Sow, Yacine | | | $ | 9,533.33 | | | | 1,824.00 | $ | 9,533.33 |
| Tennis, Jessica D | $ | 4,946.39 | | | | | | 681.50 | $ | 4,946.39 |
| Tomezsko, Thomas | $ | 3,296.99 | | | | | | 454.25 | $ | 3,296.99 |
| Torres, Nathaniel A | $ | 5,646.79 | | | | | | 778.00 | $ | 5,646.79 |
| Tully, Selena N | $ | 4,020.98 | | | | | | 554.00 | $ | 4,020.98 |
| Ugarte, Maria F | $ | 1,154.04 | | | | | | 159.00 | $ | 1,154.04 |
| Vick, Logan | $ | 8,564.55 | | | | | | 1,180.00 | $ | 8,564.55 |
| Vilela dos Reis Vianna, Biatriz | $ | 459.07 | | | | | | 63.25 | $ | 459.07 |
| Wilkinson, Blake A | $ | 5,463.53 | | | | | | 752.75 | $ | 5,463.53 |
| Wong, Ivy | $ | 3,645.38 | | | | | | 502.25 | $ | 3,645.38 |
| York, Amber B | $ | 691.33 | | | | | | 95.25 | $ | 691.33 |
| Yun, Anita P | $ | 2,685.49 | | | | | | 370.00 | $ | 2,685.49 |
| **Total** | **$** | **298,400.00** | **$** | **149,400.00** | **$** | **2,200.00** | | **77,948.50** | **$** | **450,000.00** |

# Exhibit C

**Joint Statement**

Brown University and a group of current and former student workers have amicably resolved a pending legal action related to the Brown University Dining Services ("BuDS") program.  The resolution affects students who worked as Supervisors, Assistant Managers or Managers in the Blue Room, Carts or Cashiers units of BuDS between January 2016 and October 2018.

A student worker made an inquiry with the Rhode Island Department of Labor and Training, and he and another student subsequently filed a complaint in U.S. District Court seeking to represent a broader group of BuDS student workers. On Sept. XX, 2019, Brown University and the plaintiffs in the federal case reached an amicable resolution of that legal proceeding, pertaining to work performed by certain categories of BuDS students employed between January 2016 and October 2018, while Brown and the Rhode Island Department of Labor and Training agreed to an amicable resolution of the related state agency action.

Significant facts and legal claims were in dispute.  Brown believes the legal actions have no merit, while the students maintain they were not appropriately compensated for the full extent of work performed, including on-call time.  The parties agreed to resolve these legal proceedings to eliminate the burden, risk, and expense of further litigation. Both the federal court and the state agency have approved the settlement agreement and determined it to be a fair resolution of the issues presented.

Current and former BuDS student workers who are eligible to participate in this settlement action will receive notification of their eligibility and further instructions.  As noted above, the settlement pertains only to individuals who worked as Supervisors, Assistant Managers or Managers in the Blue Room, Carts and Cashiers units of BuDS from January 2016 to October 2018.  No other BuDS workers are affected.

Student workers will remain an essential part of dining operations at Brown.  For those students who seek campus employment, Brown remains committed to ensuring experiences that enable students to effectively balance their academic study and other activities with their employment.

Per the terms of the settlement agreement, all parties have agreed to limit their public communications on these legal matters to this joint statement.